IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FAIRLY W. EARLS,　　　　　　　　　　　　　　　Case No. 15-cv-637-pp

　　　　　　　Petitioner,

v.

MICHAEL A. DITTMANN,

　　　　　　　Respondent.

**ORDER DENYING THE PETITION (DKT. NO. 1), DENYING A CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE**

**I.　　INTRODUCTION**

On May 27, 2015, Fairly Earls, representing himself, filed a petition pursuant to 28 U.S.C. §2254, asserting that his state conviction and sentence violated the Constitution. Dkt. No. 1. The petition alleges that the petitioner pled not guilty to ten counts of felony bail jumping. Id. at 2. A jury found him guilty of all ten counts, and the court sentenced him to sixty years of incarceration. Id. Currently, the petitioner is incarcerated at Columbia Correctional Institution. Id. at 1.

The petition raises seventeen claims. Dkt. No. 1 at 6-14. Generally, the claims fall into several categories. Grounds one, two and three are based on the petitioner's theory that the bond paperwork he signed provided that if he violated the terms of the agreement, he'd forfeit the money posted for his bond. He argues that he never signed any agreement providing for non-monetary punishment for bond violations, and thus that his criminal conviction and

1

sentencing based on bail jumping constituted misapplication of the law, that he was innocent of the charges, and that the state did not present evidence to support its allegations that he was subject to non-monetary punishments. Grounds four, nine, eleven, fourteen and sixteen allege that the petitioner's trial counsel was ineffective, for failing to challenge the charges, failing to object to exclusion of evidence and disqualification of a witness, failing to object to the trial court's failure to warn the petitioner of the penalties he faced, failing to object to a second prosecution on the same grounds, and failing to object to an excessive sentence. Grounds five, six, seven and eight challenge various evidentiary rulings by the state court (excluding some of the evidence the petitioner offered, and disqualifying one of the defendant's witnesses). Grounds ten, fifteen, and seventeen allege that the trial court failed to adequately inform the petitioner of the penalties he faced, gave him a sentence above the statutory maximum, and refused to allow him to adjourn his <u>Machner</u> hearing so that he could obtain a subpoena to bring in a witness. Grounds twelve and thirteen allege that the state violated the Double Jeopardy Clause by prosecuting him twice on the same facts.

The court finds that, while it appears that the petitioner has exhausted his state remedies, all of his substantive claims stem from a fundamental misunderstanding of the law underlying his conviction. Because all of his habeas theories spring from this fundamental understanding, the court finds that he cannot demonstrate that his conviction, or any of the appellate courts' decisions affirming that conviction, are constitutionally infirm. He is not

2

entitled to habeas relief, and for the reasons stated below, the court will dismiss the petition and the petitioner's case.

## II. EXHAUSTION OF STATE REMEDIES

In order to decide whether to allow this case to move forward, the court first must determine whether the petitioner appears, on the face of his complaint, to have exhausted his state remedies on these claims. Section 2254 states, "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." The United States Court of Appeals for the Seventh Circuit has held that a district court judge cannot consider the merits of a petitioner's habeas argument "unless the state courts have had a full and fair opportunity to review them." Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991). This means, basically, that before a person can get a federal judge to review his arguments on a habeas petition, that person first must appeal the issues all the way up to the highest court in the state for a ruling on the merits. Lieberman v. Thomas, 505 F.3d 665, 669 (7th Cir. 2007) (citations omitted). When a federal judge reviews a petition and realizes that the petitioner has not exhausted his state court remedies, the judge may either dismiss the case entirely, stay the federal case to let the petitioner go back to state court to exhaust his remedies, or allow the petitioner to amend his petition to remove the unexhausted claims. 28 U.S.C. §2254(b)(1)(A). See also Rhines v. Weber,

3

544 U.S. 269, 278 (2005); Rose v. Lundy, 455 U.S. 509, 510 (1982); and Dressler v. McCaughtry, 238 F.3d 908, 912 (7th Cir. 2001).

The petitioner alleges in his complaint that he appealed the seventeen issues he raises here to the Wisconsin Court of Appeals on March 5, 2014, and that the Court of Appeals affirmed the state court's rulings on November 19, 2014. Dkt. No. 1 at 3. The Court of Appeals denied the petitioner's motion for reconsideration on December 4, 2014. Id. He further alleges that on December 29, 2014, he filed a petition for review with the Wisconsin Supreme Court, and that the Supreme Court denied the petition on March 16, 2015. Id. Based on the assertions the petitioner makes on the face of his petition, it appears that he has exhausted his state remedies, and thus that this court can move on to the question of whether his claims are the type for which a federal court can grant habeas relief. (The court notes that it makes this determination solely on the basis of the assertions the petitioner made on the face of the petition.)

### III. SCREENING STANDARD

The court now moves to consider whether the petitioner has raised claims for which federal habeas relief might be available. Section 2254(a) allows a federal district court to consider the merits of a habeas petition when the petitioner claims "that he is in custody in violation of the Constitution or laws or treaties of the United States." Rule 4 of the Rules Governing §2254 Cases requires a district court to "screen" a §2254 petition, to make sure the petition alleges a claim for which a federal court may grant relief. That rule says:

4

> If it plainly appears from the petition and any
> attached exhibits that the petitioner is not entitled to
> relief in the district court, the judge must dismiss the
> petition and direct the clerk to notify the petitioner. If
> the petition is not dismissed, the judge must order
> the respondent to file an answer, motion, or other
> response within a fixed time, or to take other action
> the judge may order.

In "screening" a §2254 petition, the court tries to figure out whether the petitioner has laid out cognizable constitutional or federal law claims.

   A. <u>The Petitioner's Contract-Based Claim Regarding his Criminal Prosecution for Bail Jumping Does Not Demonstrate a Violation of Clearly-Established Federal Law.</u>

In the first three grounds of the petition, the petitioner alleges that, "The state charged and sentenced the defendant on non-monetary bond violations when clearly the bail bond document given to the defendant is a monetary bond." Dkt. No. 1 at 6. He asserts that the bond document promised a "cash binding." Id. at 7. In the brief he filed with his petition, the petitioner argues that according to Wisconsin law and to the terms of the bond agreement he signed, any violation of the conditions of his bond could subject him only to a monetary penalty—loss of the bond—not to criminal conviction and incarceration. Dkt. No. 2 at 5.

Title 28 United States Code §2254(d)(1) states that a federal judge cannot grant habeas corpus relief on a claim which was adjudicated on its merits in state court, unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Thus, this court cannot grant habeas relief on any claim that the Fond du Lac County Circuit

5

Court adjudicated on the merits unless that adjudication resulted in a decision contrary to clearly-established federal law.

The petitioner is arguing a contract theory—he claims that he had a contract with the state, and that the contract provided that if he violated the contract, he'd lose his bond money. He argues that this monetary penalty was the only penalty that could be imposed on him for violation of the terms of the bond contract. The petitioner is incorrect.

The petitioner correctly states that a bond agreement is a civil contract, and that the civil penalty for breaching that contract is forfeiture of the bond. See, e.g., State v. Wickstrom, 134 Wis.2d 158, 161-62 (Wis. 1986). But there is a *criminal* statute in the state of Wisconsin that prohibits bail jumping—Wis. Stat. §946.49. That statute provides for criminal prosecution of anyone who, having been released from custody, intentionally violates the terms of his bond. Criminal statutes aren't based in contract theory—there is no law that says that the state can't prosecute a person for murder, for example, unless the person has signed a contract agreeing to be prosecuted for murder. The state can prosecute the petitioner for bail jumping even if he didn't sign an agreement allowing the state to bring such a prosecution, and nothing in federal law or the federal Constitution says otherwise.

Thus, the petitioner's claims relating to the state's ability to prosecute him for bail jumping do not demonstrate that the prosecution and conviction was contrary to, or involved an unreasonable application of, federal law.

6

Case 2:15-cv-00637-PP   Filed 07/10/15   Page 6 of 20   Document 6

B. <u>The Court Will Not Allow the Petitioner to Proceed on his "Actual Innocence" Claims, Because "Actual Innocence" Cannot Provide an Independent Basis for Habeas Relief</u>.

The petitioner argues in several of his grounds that the court should grant his petition because he is actually innocent. There are two kinds of "actual innocence" claims. One is an Eighth Amendment "actual innocence" claim—the claim that "even if the proceedings that had resulted in his conviction and sentence were entirely fair and error free, [the petitioner's] innocence would render his [sentence] a 'constitutionally intolerable event' under the Eighth Amendment." <u>Schlup v. Delo</u>, 513 U.S. 298, 313-14 (1995) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 419 (1993)). <u>Herrera</u> was a death penalty case, in which the court "assumed for the sake of argument that 'in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim.'" <u>Id.</u> at n.28 (quoting <u>Herrera</u>, 506 U.S. at 417).

The second kind of "actual innocence" claim is procedural. The Supreme Court has held that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986). This kind of "actual innocence" claim enables a petitioner to have his constitutional claims reviewed even if he failed to raise them in the state court. See <u>McQuiggin v.</u> Perkins, 133 S.Ct. 1924, 1928 (2013). In other words, a petitioner can try to raise an "actual

7

innocence" claim if he has not exhausted his state remedies. Situations in which a petitioner can successfully argue "actual innocence" to avoid dismissal for failure to exhaust remedies "are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Such a petitioner must not only prove to the court that he has newly discovered evidence, but "an independent constitutional violation" must have "occur[ed] in the underlying state criminal proceeding." Id. (citing Herrera v. Collins, 506 U.S. 390, 400 (1993)). Further, the "'newly discovered evidence'" must be "'so compelling that it would be a violation of the fundamental fairness embodied in the Due Process Clause.'" Bates v. Smith, No. 05-C-459, 2006 WL 1085119, *1 (E.D. Wis. April 25, 2006) (quoting Moore v. Casperson, 345 F.3d 474, 491 (7th Cir. 2003)). If the petitioner presents new "evidence that bears only on the question of guilt or innocence," that "is not reviewable by a federal court on a motion for habeas corpus relief." Bates, 2006 WL 10851119 at *1 (quotation marks and citation omitted).

     Perhaps another way to put it is this—a habeas corpus petition is not another chance to appeal guilt or innocence. If a petitioner "argu[es] actual innocence as an independent basis for habeas relief, that claim must be denied." Weston v. Kemper, No. 14-CV-424, 2015 WL 403886, n.2 (E.D. Wis. Jan. 29, 2015). "Actual innocence, in and of itself, is not a ground for habeas

8

relief; there must be some underlying constitutional violation." Id. (citing United States ex. rel. Bell v. Pierson, 267 F.3d 544, 551 (7th Cir. 2001)).

The petitioner claims "actual innocence" in several of the grounds of his petition—ground two (his contract theory), ground six (his argument that the state court did not admit the bond form as evidence), ground eight (his argument that the state court erroneously excluded a critical witness), and ground thirteen (his double jeopardy claim). As the court already has discussed, the petitioner's theory that he could be criminally prosecuted for bail jumping only if he agreed to that penalty in his bond forms has no basis in the law. The state did not need the petitioner's consent in order to prosecute him for bail jumping.

Even more to the point, however, the petitioner argues that he has exhausted his remedies, and that he raised all of the claims he raises here in the state courts. The court has indicated above that, for now—without having heard from the respondent—it appears that the petitioner is correct, and that he has exhausted his remedies. Because it does not appear that the petitioner has procedurally defaulted on his claims, and because actual innocence cannot be an independent ground for habeas relief, the court will not allow the petitioner to proceed on actual innocence claims.

As a result of the above, the petitioner may not proceed on claims two, six,eight and thirteen.

C. <u>None of the Evidentiary Errors the Petitioner Alleges Are Sufficiently Prejudicial to Compromise the Petitioner's Due Process Rights to a Fair Trial</u>.

"[S]tate court evidentiary errors do not normally entitle a defendant to habeas relief." <u>Anderson v. Sternes</u>, 243 F.3d 1049, 1053 (7th Cir. 2001). "Rather, habeas relief is appropriate only if the erroneous evidentiary rulings were 'so prejudicial that [they] compromise[d] the petitioner's due process right to a fundamentally fair trial.'" <u>Id.</u> (quoting <u>Howard v. O'Sullivan</u>, 185 F.3d 721, 723-24 (7th Cir. 1999)). "[T]he error must have produced a significant likelihood that an innocent person has been convicted. Indeed, because of this high standard, evidentiary questions are generally not subject to review in habeas corpus proceedings." <u>Anderson</u>, 243 F.3d at 1053 (internal quotation marks and citation omitted).

"'[C]ourts must be careful not to magnify the significance of errors which had little importance in the trial setting.'" <u>Id.</u> (quoting <u>Alvarez v. Boyd</u>, 225 F.3d 820, 825 (7th Cir. 2000)). This requires an examination of "'the entire record, paying particular attention to the nature and number of alleged errors committed; their interrelationship, if any of their combined effect; how the trial court dealt with the errors, including the efficacy of any remedial measures; and the strength of the prosecution's case.'" <u>Anderson</u>, 243 F.3d at 1053 (quoting <u>Alvarez</u>, 225 F.3d at 825)). The "court must be firmly convinced that but for the errors, the outcome of the trial probably would have been different." <u>Alvarez</u>, 225 F.3d at 825 (citations omitted).

10

In claim three of his petition, the petitioner asserts that his bail-jumping conviction cannot stand because it "is based upon insufficient evidence to support every element of the crime." Dkt. No. 1 at 8. He argues that in order to prove that he was guilty of bail jumping, the state had "to prove non-monetary conditions were violated and that the state had an agreement for release for non-monetary conditions with the defendant." Id. As the court already has held, this argument is based on the petitioner's misunderstanding of the law. Criminal bail jumping is not a contract claim, and it does not require the state to prove that the person being released on bond agreed to be prosecuted if he violated the terms of the bond. The court will not allow the petitioner to proceed on that evidentiary claim.

In ground five of his petition, the petitioner argues that "the trial court denied the defendant a defense and abused its discretion by the exclusion of highly probative evidence calling into question the ultimate integrity of the fact-finding process." Dkt. No. 1 at 10. The petitioner asserts that the state court prevented the jury from seeing a "key piece of evidence" that the state gave to the defendant and that showed "the bond form that the state wanted the defendant to be released on and comply with." Id. This is again a version of the petitioner's contract claim—if the jury had seen the bond papers, and seen that the petitioner had not contractually agreed to be prosecuted, it would not have convicted him. Again, the state did not have to prove that the petitioner contractually agreed to be prosecuted, and thus the fact that the trial court excluded the bond form was not an evidentiary ruling so prejudicial that it

11

compromised the petitioner's right to a fair trial. The petitioner cannot proceed on that claim.

In ground seven, the petitioner asserts that the state court "denied [him] a fair trial . . . when the . . . court abused its discretion by improperly disqualifying a witness and . . . denying the defendant a defense." Dkt. No. 1 at 11. He asserts that he and his attorney wished to call a witness who had personal knowledge of the bond document but that the judge determined that the witness did not "know anything." Id. The plaintiff does not identify this witness, or indicate what this witness would have said. He does state that the witness "had personal knowledge of the bond form that contained no conditions . . . ." Because the petitioner does not explain who the witness was, or what the witness would have said, the court does not know for sure. But it appears that this, again, is part of the petitioner's theory that the bond form did not contain the petitioner's agreement to be prosecuted. Under these circumstances, the state court's refusal to allow this unidentified witness to testify was not so prejudicial that it compromised the petitioner's right to a fair trial. The court will not allow the petitioner to proceed on that claim.

Therefore, the petitioner may not proceed on claims three, five and seven.

D. The Petitioner Cannot Demonstrate that his Trial Counsel's Actions Constituted Ineffective Assistance of Counsel under the Sixth Amendment or that the Actions Occurred in Violation of Clearly Established Federal Law.

The Sixth Amendment to the Constitution guarantees a defendant in a criminal trial the right to have "assistance of counsel for his defense;" to be

12

meaningful, that assistance must be affective. See <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

In ground four, the petitioner argues that his trial counsel was ineffective because counsel did not object to the bail-jumping charges, did not ask the court to dismiss those charges, and denied the petitioner the defense he sought. A review of ground four demonstrates that the defense the petitioner sought, and the charges he wished his counsel to challenge or have dismissed, was his defense that he did not contractually agree to be prosecuted. The court already has determined that this was not a valid defense under the law. Thus, the petitioner cannot demonstrate that his counsel's failure to raise it constituted denial of his right to effective assistance of counsel under the Sixth Amendment. The same is true of his ground nine ineffective assistance claim, in which he argues that trial counsel did not object to the trial court's exclusion of the bond forms or exclusion of the unidentified witness.

In ground eleven, the petitioner argues that his trial counsel was constitutionally ineffective because counsel did not object to "the state not giving a warning on the penalties on the bond violations," and failing to explain to the jury that the defendant could not be prosecuted if he hadn't contractually agreed to be prosecuted. Again, these arguments are based on the petitioner's contract theory, which is not a valid theory under the law. Counsel is not constitutionally ineffective for not arguing a theory which has no basis in the law.

13

In ground fourteen, the petitioner argues that his counsel was ineffective for failing to object to the fact that he was charged a second time for the same offenses, and for denying him the defense of arguing that he couldn't be charged a second time. The petitioner raises a similar issue in his double jeopardy claim, which the court discusses below. The petitioner again misapprehends the law, as discussed below. The petitioner was not criminally prosecuted twice for the same offense—he had a *civil* forfeiture of his bond, and a *criminal* prosecution for bail jumping. A civil remedy followed by a criminal prosecution does not violate the Double Jeopardy Clause, and thus the petitioner cannot demonstrate that his trial counsel was constitutionally ineffective in failing to make that argument.

Finally, in ground sixteen, the petitioner argues that his counsel was ineffective for failing to argue that the trial court gave him a sentence in excess of the statutory maximum. The petitioner was convicted of ten counts of bail jumping. *One* count of bail jumping has a maximum penalty of six years of incarceration. Six years per each count results in a maximum possible penalty of sixty years—the term the trial court imposed. The petitioner appears to believe that a trial court cannot impose the maximum per-count penalty more than once in cases where the defendant is convicted of multiple counts. Again, his understanding of the law is simply incorrect. As the Wisconsin Supreme Court has made clear, "Multiple punishments are appropriate for each bail violation because of the deterrent effect on defendants to not violate the terms of bail." State v. Anderson, 219 Wis.2d 739, 756 (Wis. 1998). The petitioner

14

cannot demonstrate that his counsel's failure to argue against clearly-determined state law was constitutionally ineffective.

The petitioner, therefore, may not proceed on claims four, nine, eleven, fourteen, and sixteen.

> E. The Petitioner Cannot Show that the State Court Failed to Adequately Warn Him of Possible Sanctions, or that that Failure Rendered his Conviction Constitutionally Infirm.

In ground ten, the petitioner asserts that "the trial court abused its discretion by failing to give adequate warning of the penalties to be imposed." Dkt. No. 1 at 12. He argues that the court never warned him of the possible "sanctions or penalties to be invoked for failure to comply" with the bond agreement. Id. He also asserts that the bond agreement itself failed to give any warning other than, "if the defendant does not comply with the terms of his bail/bond, the bond will be forfeited." Id.

There are two issues with this argument. First, the petitioner appears to be arguing another facet of his contract theory—that the trial court was required to tell him at his bail hearing that he could be criminally prosecuted if he deliberately violated the terms of the bond, and that if the court didn't tell him that, he couldn't be prosecuted. The legal principle is so well-established that it has become a trite catch-phrase: "ignorance of the law is no excuse." The Supreme Court has said it: "The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation." U.S. v. Int'l Minerals & Chemical Corp., 402 U.S. 558, 563 (1971). The Seventh Circuit Court of Appeals has said it: "The traditional

15

rule in American jurisprudence is that ignorance of the law is no excuse to a criminal prosecution." U.S. v. Wilson, 159 F.3d 280, 288 (7th Cir. 1998)(citing Cheek v. United States, 498 U.S. 192, 199 (1991)). Even if the trial court did not tell the petitioner that he could be prosecuted for knowingly violating the conditions of his bond, ignorance of the bail-jumping law is no excuse, and thus such a failure would not render his conviction constitutionally infirm.

Further, with regard to this particular claim, the state appellate court pointed out that the petitioner did not provide it with the transcript of his bail hearing. Dkt. No. 2-1 at 7. He did not provide that court with proof that the trial court failed to warn him of the consequences of violating his bail. If he did not provide the state appellate court with that information, there is no basis for this court to determine that that court made a mistake in refusing to overturn his conviction on that ground.

For these reasons, the petitioner cannot proceed on the claim he raised in ground ten.

> F. A Civil Judgment for Violating the Terms of Bond and a Criminal Conviction for Bail Jumping Do Not Constitute Two "Prosecutions" for the Same Criminal Offense, and the Fifth Amendment's Protections Against Double Jeopardy Do Not Apply.

The petitioner's twelfth claim—that the state court prosecuted him twice for the same offense—is based on the Fifth Amendment of the Constitution. Dkt. No. 1 at 13. The Fifth Amendment's Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." U.S. v. Wilson,

16

Case 2:15-cv-00637-PP   Filed 07/10/15   Page 16 of 20   Document 6

420 U.S. 332, 343 (1975) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)).

The petitioner violated the terms of his bond, which resulted in a forfeiture of bond. That led to the state court entering a civil money judgment against him. The state also charged him with the crime of knowingly violating the conditions of his bond—a criminal offense. The Double Jeopardy Clause protects a person from being *criminally prosecuted* more than once for the same offense. It does not prohibit successive civil and criminal judgments. The bond revocation and resulting civil money judgment, followed by the criminal bail-jumping prosecution, did not constitute successive prosecutions, and thus did not violate the Double Jeopardy Clause. Claim twelve, therefore, is not a colorable constitutional claim, and the petitioner may not proceed on ground twelve.

### G. The Petitioner Cannot Demonstrate that his Sixty-Year Sentence Was Constitutionally Infirm.

The fifteenth ground addresses the petitioner's assertion that "the trial court abused its discretion by giving [him] an unequal sentence." Dkt. No. 1 at 14. The petitioner alleges that the trial court gave him a "sentence in excess of the maximum authorized by law." Id. According to the plaintiff, violation of bond terms results in a Class H Felony, which "carries a six year sentence." Id. "The court sentenced the defendant to a sixty year sentence." Id.

The court already has analyzed this claim in the ineffective assistance discussion above—the petitioner is incorrect in his belief that a trial court cannot impose the maximum per-count penalty more than once in cases where

17

the defendant is convicted of multiple counts. "Multiple punishments are appropriate for each bail violation because of the deterrent effect on defendants to not violate the terms of bail." State v. Anderson, 219 Wis.2d 739, 756 (Wis. 1998). Accordingly, the petitioner cannot proceed on the claim raised in ground fifteen.

> H. The State Court's Failure to Hold a *Machner* Hearing Did Not Result in a Violation of Clearly Established Federal Law.

In his seventeenth and final ground, the petitioner asserts that the trial court improperly denied him an "opportunity to develop the record for appeal." Dkt. No. 1. at 14. He argues that he asked the court for a Machner hearing, and subpoenaed his trial counsel to appear at the hearing. Id. The trial court denied the request, which the petitioner asserts "involved an unreasonable application of clearly established state and federal law." Id.

"A Machner hearing is an evidentiary hearing which may be held when a criminal defendant's trial counsel is challenged for allegedly providing ineffective assistance." Williams v. Grams, No. 06-C-215, 2006 WL 581202, *1 (E.D. Wis. Mar. 8, 2006) (citing State v. Machner, 92 Wis.2d 797 (Wis. Ct. App. 1979)). "A state's failure to hold an evidentiary hearing may violate due process." Williams, 2006 WL 581202 at *1 (citations omitted).

There are two problems with this claim. The first is, as the court has discussed above, that the petitioner's ineffective assistance claims all were based on misguided belief that he couldn't be prosecuted for bail jumping unless he agreed. Because his legal theory had no merit, he cannot

18

demonstrate that the trial court's refusal to give him a hearing on his counsel's failure to raise that theory renders his conviction constitutionally infirm.

In addition, the state court of appeals explained that because the petitioner did not subpoena his defense attorney until two days before the post-conviction motion hearing (despite being aware of the hearing date for over a month), the attorney did not appear at the hearing. Dkt. No. 2-1 at 4. It was the petitioner's responsibility to arrange for his counsel to appear. Id. Because his counsel did not appear, the court could not hold the Machner hearing. ("An ineffective assistance claim must be supported by trial counsel's testimony," id. at 5, citing State v. Machner, 92 Wis.2d 797, 804 (Wis.App. 1979)). Because it was the petitioner's error that resulted in the inability to have the Machner hearing—or, as he puts it, in his inability to develop the record—he cannot demonstrate that the failure to hold that hearing rendered his conviction constitutionally infirm. Thus, he cannot proceed on ground seventeen.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing §2254 Cases provides that a district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant." A certificate of appealability "may be issued only if the prisoner has at least one substantial constitutional question for appeal." 28 U.S.C. §2253(c)(2). Because the petitioner has not made a substantial showing of the denial of a constitutional right, the court will not issue a certificate of appealability.

19

**V. CONCLUSION**

For the above reasons, the court **DENIES** the petitioner's habeas corpus petition . The court **DISMISSES** the case and **DENIES** a certificate of appealability.

Dated at Milwaukee, this 10th day of July, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge